47 Mo. 150; Com. v. Markham, 7 Bush, 486; North Hudson Co. R. R. v. Hoboken, 41 N. J. Law, 71; Leloup v. Mobile, 127 U. S. 640; Gibbons v. Ogden, 9 Wheaton, 1; R. R. v. Fuller, 17 Wall. 560; Robbins v. Shelby Taxing Dist., 120 U. S. 489; Western Union Tel. Co. v. Pendleton, 122 U. S. 347; Pervear v. Com., 5 Wall. 475; U. S. v. Dewitt, 9 Wall. 41; Sherlock v. Alling, 93 U. S. 99; Slaughter House Cases, 16 Wall. 36; R. R. v. Fuller, 17 Wall. 560; Kimmish v. Ball, 129 U. S. 217; Smith v. Alabama, 124 U. S. 465; West. U. Tel. Co. v. Mass., 125 U. S. 530; American Rapid Tel. Co. v., Hess, 125 N. Y. 641; New York v. Squire, 145 U. S. 175.

PER CURIAM, April 8, 1895:

We find nothing in the record that would justify us in sustaining either of the assignments of error. There was no error in entering judgment against the defendant company for want of a sufficient affidavit of defense.

Judgment affirmed.

---

Constantine Haas *v.* Bridget Bergen, Administratrix of Daniel Bergen, deceased, and Thomas J. Victory, Appellants.

*Alley—Easement.*

An alley was laid out for the use of a building on its south side. Subsequently the property both north and south of the alley became vested in the same person, who by deed conveyed the property on the south to defendants' predecessor in title. The lot was described in the deed as " extending in length or depth along the east side of Fifteenth street to an alley three feet wide laid out at the distance of seventy-three feet north of Filbert street, leading into and from the said Fifteenth street for the accommodation of this and the other lots of ground on the south of the said alley. . . . . Together with the free and common use and privilege of the afore-said three-feet-wide alley, and of a water course therein, at all times hereafter forever." The same grantor subsequently conveyed the lots on the north side of the alley, with the free and common use, right, liberty and privilege of this alley. *Held*, that the owner of the property on the south side of the alley had no right to the exclusive use of the alley as against the owner of the property on the north.

Argued April 1, 1895.   Appeal No. 156, Jan. T., 1895, by defendants, from decree of C. P. No. 3, Phila. Co., Dec. T., 1893, No. 1087, on bill in equity.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.   Affirmed.

Bill in equity to prevent the erection of a fence.

The case was referred to Charles Biddle, Esq., as master, who reported as follows :

" The bill in equity in the above case has been brought by Constantine Haas, owner of properties Nos. 31, 33, 35 and 37 North Fifteenth street, asking that an injunction be issued to restrain Bridget Bergen, administratrix, and Thomas J. Victory from erecting a fence on his land and separating a portion of his property from a certain three-feet-wide alley, running into Fifteenth street, and partly bounding his property on the south.

" The bill alleges that complainant bought property No. 31 North Fifteenth street, and that this property is bounded on the south by said three feet-wide-alley, and that as owner of said property he is entitled to the use of the alley as a passageway and watercourse.   That he has erected a hotel on properties No. 31, 33, 35 and 37 North Fifteenth street and built up a solid wall along the said alley for about the distance of twenty-two and one half feet.   That his property then recedes from the alley about four feet and continues at that distance for about nineteen and one half feet.   His building then returns to the said alley, and the said brick wall is continued to the end of his lot.   That in the space of four feet by nineteen and one half feet, left by the receding of his property from his line, he has erected a fire-escape for the protection of the guests in his hotel.   That the defendants have attempted to erect a fence on his property from the point where his wall recedes from the line of the alley to the point where the wall is built out again to the said line.   That if this fence is erected it will cause him irreparable injury, by reason of the fact that it will greatly destroy the utility of said fire-escape, and that the erection of the said fence will preclude him from enjoying the free and common use and privilege of the said alley, to which he is entitled.   He therefore asks,

" 1st. That defendants be enjoined from erecting a fence ; and

" 2d. That they be enjoined from interfering with the free and common use and privilege of the said three-feet-wide alley.

" The defendants answer that they are the owners of the property on the south of the alley, which property is called the Waverly Hotel, and that they have the exclusive right to the alley in question, and the complainant is not entitled to use it for any purpose whatever; that they have a perfect right to erect a fence on the property of the complainant, as it is a partition fence, and as the building inspectors had appointed a fence view and said fence viewers had ordered the complainant to erect a fence ; and as he had failed to do so, they, the defendants, had a right to erect it for him and call upon him to pay the expenses ; that the fence had been there for a long time prior to the building of the present hotel by the complainant, and that he had no right to tear it down and use the alley as an outlet for his fire-escape. . . .

" Boundary lines cannot be established in this form of proceeding. The object of the act of assembly in regard to fence views is to provide a summary remedy to keep partition fences from going into dilapidation. Disputed questions as to lines can be settled afterwards.

" In considering, then, the right of the defendants to erect this fence, it is first important to determine exactly what their rights are in the alleyway. They claim to have the exclusive right of the alley by virtue of a grant to them of the properties on the south of the alley, to which properties they claim the right to use the alley is confined. They claim that their grantor obtained this exclusive right by virtue of a deed of conveyance from Thomas C. Rockhill and Charles S. Bowker, trustees of Mrs. Wm. D. Lewis, to Charles H. Muirheid. At the time these trustees conveyed to Muirheid, they had received from Mr. Wm. D. Lewis, the husband of their cestui que trust, a conveyance of all the land bordering upon this alley both to the north and to the south. There is no evidence to show that during the time the dominant and servient tenements were thus vested in Mr. Lewis and his wife, there was any continuous and apparent easement over this alley that might in any way affect the right to change the character of the servitude upon a reconveyance of portions of the property, or which

would in any way prevent the extinguishment of the right in Mr. Lewis by reason of both properties vesting in him, and counsel for defendants, in his brief, admits that 'at this time the whole tract being in Wm. D. Lewis it was competent for him to extend this easement to the premises to the north.' Such being the case, in order to discover whether the defendants are right in contending that they have the exclusive right of passage over this alley, it is necessary to examine the terms of the conveyance from the trustees of Mrs. Lewis to Muirheid, through which defendants claim their title.

" The alley was originally laid out for the use of the premises on the south; and if this indenture conveys the easement in the same form to the grantors of the defendants, their right to the exclusive use would seem to be sustained, as they are now the owners of all the property bordering on the south of the alley. The two references to the alley in the deed from the trustees of Mrs. Wm. D. Lewis to Muirheid, dated December 21, 1850, are as follows:

" The deed conveys a brick messuage and lot or piece of ground, and described it as ' extending in length or depth along the east side of Fifteenth street (then Schuylkill Eighth street), *to an alley 3 feet wide laid out at the distance of 73 feet north of Filbert street leading into and from the said Schuylkill Eighth street, for the accommodation of this and the other lots of ground on the south of the said alley.'* When the conveyance of the right to use this alley is made in the same deed, the language is as follows:

" ' Together with the free and common use and privilege of the aforesaid 3-feet wide alley and of a water course therein, at all times hereafter forever.'

" It is to be observed that there is a marked difference between the way in which the alley is described when it is referred to merely for the purpose of bounding the property, and when it is referred to for the purpose of conveying or limiting a right of passage in it. The alley was properly described as formerly laid out for the accommodation of those properties on the south, and it is but reasonable to suppose, that if the grantors wished to convey the exclusive use in that alley to those who bordered on the south, they would certainly have said so when they subsequently made the grant of the easement. It might well be

argued that they wished the property on the north of the alley, which they then owned, to have the use of the alley, and purposely avoided an exclusive conveyance of the right when they sold the land on the south of it.    This view is supported by the fact that when they subsequently conveyed the land bordering the alley on the north, they conveyed to the grantee the free and common use, right, liberty and privilege of this alley, and this property, by subsequent conveyance, became seized in the complainant in this action.

"In the opinion therefore of your master, the defendants have only a right to use this alley as a passageway in common with the other properties bordering on it, and the grantor of the complainant was given an equal right by the trustees of Mrs. Lewis, by deed dated March 11 1867. . . .

"Neither does your master think that the defendants are right in their contention, that even if the complainant had secured the right to use this alley, he had lost it by reason of the fact that the right of user was confined to 31 North Fifteenth street, and as he had purchased the three other adjoining properties and erected upon them a large hotel, he had imposed an additional servitude upon the alley; and, in addition, as the complainant had merged the premises to which this right was attached in a large building covering three adjoining lots, it rendered it impossible to use this alley as an appurtenance only of 31 North Fifteenth street and the easement was therefore extinguished, as the changes rendered its proper use impossible.    It is undoubtedly true that it would be illegal to increase the burden of the servitude upon this alley, but there was no testimony submitted before your master to show that the burden was in any way increased.    It was shown, on the contrary, that the hotel of the complainant had an alley on the back entering into Cuthbert street, which was used for a passage into the hotel, and the testimony only warrants your master in finding that the use that is likely to be made of the alley entering into Ffteenth street is that in case of fire the guests of the hotel would escape through it.    There was no testimony produced to even show that there was a doorway from the hotel into the alley, though a plan which was submitted by the defendants shows that there was a doorway near the fire-escape; but this is not enough to sustain the allegation

that an additional servitude has been imposed or that the right cannot be defined. But even if it should be granted that an additional servitude was imposed, or that the right of way had been lost, it would not justify the defendants in vindicating their rights by entering on the complainant's land and erecting a fence.

" It is important in this connection to determine the character of the fence which the defendants have tried to erect. It is claimed by them to be a partition fence; but when properties are separated by an alley, whether that alley is three feet wide or twelve feet wide, whether it be a private or a public alley, in the opinion of your master there cannot be, so long as the alley is in existence, a technical partition fence between the properties so situated. They do not join each other, and the fence on either side of the alley must be erected exclusively on the property of the person upon whose side it is built, and not partly on the land of each owner; the rights of the opposite owners of an alley are similar to that of owners upon a public street. Judge GORDON, in Ellis v. Academy of Music, 120 Pa. 608, quotes this language from Chief Justice COCKBURN:

" ' The same principle which applies to a public street and which is the foundation of the doctrine, seems to me to apply with equal force to the case of a private road,' and then says:

" ' As the doctrine here stated seems to be reasonable and sound, we cannot understand why we should not adopt it. It seems to be admitted that, were the alley public, its vacation would vest in each of the parties the unincumbered one half of the fee in severalty, and why this should not apply to a private way, where, just as in the case of a public way, by the grant it was made appurtenant to the several properties, we cannot understand.'

" If the alley as a passageway is abandoned (which is not claimed in this case), a claim might be made to the soil, and a partition fence erected in the center; but as long as the alley is in existence, defendants have but a right of way, and have no interest in the soil, other than the easement over it.

" The defendants base their claim to enter upon the complainant's land and erect a fence upon three grounds:

" First. That they have an interest in the soil of the alley. They contend this right was given their grantor by the deed from the trustees of Mrs. Lewis, before quoted.

" This contention is not sustained, in the opinion of your master, for the reasons already given.    The deed gives no right to the soil of the alley to the defendants; the lot conveyed is only bounded by it, and an easement only is conveyed over it. It does not seem necessary to determine where the fee now rests, as the alley has not been vacated.

" Second. The defendants claim that the complainant has no right of way over the alley, and consequently his land should be separated from it by a fence.

" If it is admitted that the defendants are right in this claim, your master cannot see that for this reason it is incumbent upon the complainant to separate his property by means of either a wall or fence.   It is true that a man having an exclusive right to use an alley as a passageway may prevent the opposite owner from using it, and might bring an action in trespass against him if he did so ; but it is not clear that he would be justified in erecting a wall or fence on his opposite neighbor's property to prevent him from being tempted to trespass upon his exclusive right.

" No evidence is produced showing that the complainant now uses this alley for any purpose ; the claim is simply that the land should be separated from this passage by a fence, and that fence should be erected on the land of the complainant.

" The third reason given by the defendants, in support of their claim, is that there had formerly been in existence a fence which separated complainant's property from the alley, and the complainant was not justified in tearing it down when he erected his new building, and then not replacing it.   Your master is not aware of any rule of law that prevents a man from tearing down a fence erected on his own property, no matter how many years he may have seen fit to maintain it there.

" Your master therefore respectfully submits that the injunction asked for in this case to restrain the defendants from erecting a fence on the land of the complainant should be made perpetual.

\*    \*    \*    \*    \*    \*    \*    \*

" The exceptions hereto attached have been filed by defendants, and your master has carefully considered them, but does not feel justified in altering his findings.

" The defendants have not established any right to enter

upon the complainant's land and erect a fence; they should therefore be restrained from doing so. They were given only a right over the alley, and they now use it, together with their tenants, as a passageway, and until this easement is interfered with, they have no right to complain of an uncertainty in the servitude imposed by complainant upon the land.

"Any loss of rights by the complainant could not invest the ownership of the soil in the defendants, but if it should be necessary for the purpose of this case, to further consider whether complainant had lost his right, by reason of the erection of the hotel, your master feels that other testimony would be required in order to establish the exact use that is now made of the alley by the complainant. If it could be shown that the building which has been erected has confined the ' free and common use, right, liberty and privilege ' of the complainant in the alley merely to the purposes of light and air, and a possible escape in case of fire, it would be a grave question whether the owners of the soil could have a right to complain. A change, which limits the easement instead of leaving it either uncertain or enlarged, could not be regarded as an injury.

"The defendants' exceptions do not raise any question that the master deems it necessary to notice more particularly; and therefore, in accordance with his report, he annexes a form of decree which he respectfully recommends in the matter, as follows:

"And now, to wit, December 8, 1894, this cause came on to be heard at this term, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz., that the injunction heretofore issued in this cause be made perpetual, and that the said defendants, Bridget Bergen, administratrix of the estate of Daniel Bergen, and Thomas J. Victory, be and they hereby are perpetually enjoined from erecting, or causing to be erected, a fence on the line of the property of Constantine Haas, (being No. 31 North Fifteenth street,) and a certain three-feet-wide alley, adjoining said property on the south, or in any way interfering with the rights of the said Constantine Haas, by erecting, or causing to be erected, a fence or barrier on the line of the property as aforesaid."

Exceptions to the master's report were overruled, and a decree entered in accordance with recommendation of the master.

*Error assigned* was in entering decree for plaintiff.

*John Dolman, John Dolman, Jr.,* with him, for appellant, cited: Paul v. Carver, 26 Pa. 223; Dobson v. Hohenadel, 148 Pa. 367; Hobson v. Phila., 150 Pa. 595; Firmstone v. Spaeter, 150 Pa. 616; Holmes v. Bellingham, 7 C. B., N. S. 329; McKee v. Perchment, 69 Pa. 342; Ellis v. Academy of Music, 120 Pa. 608; Kirkham v. Sharp, 1 Wharton, 323; Beeson v. Patterson, 36 Pa. 24; Kieffer v. Imhoff, 26 Pa. 438; Shroder v. Brenneman, 23 Pa. 348; Haines v. Drips, 2 Parsons, 236; Odenwelder v. Frankenfield, 153 Pa. 526; Kirkham v. Sharp, 1 Wharton, 323; Lewis v. Carstairs, 6 Wharton, 193; Harper v. Cemetery Co., 15 W. N. C. 172; Academy of Music v. Weldon, 32 W. N. C. 307; Allan v. Gorme, 11 A. & E. 215; Henning v. Burnet, 8 W. H. & G. 187; Jones v. Crow, 32 Pa. 398; Seibert v. Levan, 8 Pa. 383; Grace Church v. Dobbins, 153 Pa. 294; Rohrer v. Rohrer, 18 Pa. 367; Fleming v. Ramsey, 46 Pa. 252; Dysart v. Leeds, 2 Pa. 488; Rangler v. McCreight, 27 Pa. 95.

*Max Herzberg, Jacob Singer* and *Emanuel Furth,* for appellee, cited: Kieffer v. Imhoff, 26 Pa. 438.

PER CURIAM, April 1, 1895: Decree affirmed.

---

# E. A. Wheeler *v.* Pierce, Kelley & Co., Appellants.

[Marked to be reported.]

*Mechanic's lien—Character of structure—Act of June 16, 1836.*

If a structure is of such a substantial and permanent character that it may in any reasonable sense be known as a building, it may be incumbered by a mechanic's lien under the act of June 16, 1836, P. L. 696.

Defendants owned a blast furnace plant, consisting of stock house, casting house, hot blast, engine house, two systems of boilers, one on each side of the engine house, near but not contiguous to it, offices, shops and other structures, all of which were located as compactly together as practicable for the manufacture of pig iron, but not inclosed by the same walls, nor covered by the same roof. Some years after this plant was constructed defendant erected a battery of boilers in close proximity to the old boilers. The structure consisted of a stone foundation, commenced below the surface of the ground, with brick walls above the ground, in which